IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

CHOICE HOTELS INTERNATIONAL, INC.,

        Plaintiff,

v.

PAPAMKRUPA HOSPITALITY, LLC, a/k/a Paramkrupa Hospitality, LLC, an Oklahoma limited liability company,

        Defendant.

Case No. 18-CV-285-GKF-JFJ

## OPINION AND ORDER

This is a trademark infringement action brought by plaintiff Choice Hotels International, Inc. against defendant Papamkrupa Hospitality, LLC ("PHL"). Before the court is the Motion of Choice Hotels to Enforce a Settlement Agreement [Doc. 40]. For the reasons set forth below, the motion is granted.

**I. Background**

The following facts are not in dispute. On July 2, 2019, Choice Hotels notified the court that "the parties have reached a settlement and are working on formal settlement documents that will include a stipulated permanent injunction." [Doc. 33; *see also* Doc. 40-1]. A few weeks later, on July 30, 2019, counsel for Choice Hotels provided PHL's counsel with "a copy of [its] draft settlement agreement with its attachments: 1) stipulated permanent injunction and proposed order; and 2) contingent judgment and proposed order." [Doc. 40-2, p. 2]. In the email transmission, counsel for Choice Hotels noted "if everything looks good, let me know and I will . . . push to my client for approval and execution." [*Id.*]. Counsel for PHL responded with proposed revisions without indication they were subject to client approval. [*See* Doc. 40-4].

On August 19, 2019, counsel for Choice Hotels notified PHL's counsel that "Choice Hotels has agreed to your requested changes to the settlement documents. Attached is a PDF version of the finalized documents. Please have them executed by you and your client and forward them back to Bob and I. If you anticipate having any difficulty in getting them executed before the 22nd please let us know immediately a[s] that is the deadline set by the Court." [Doc. 40-5, p. 2]. The next day, counsel for PHL responded "I do not anticipate any problems in getting executed copies back to you by tomorrow, but will let you know asap, if that changes." [Doc. 40-6, p. 2].

But PHL did not provide executed copies of the settlement documents. Instead, on August 21, PHL's counsel e-mailed Choice Hotels' counsel the following:

> As a point of confirmation, rather than clarification, it is my and my client's understand[ing] and position that this Settlement and Release Agreement encompasses any and all claims that were brought or that could have been brought in the Lawsuit, including any claims related to breach of contract, royalty payments/fees, etc. In other words, Choice hotels shall not be able to file another lawsuit against Paramkrupa or any of its members arising out of or relating to the Subject Property or the franchise agreement.
>
> Specifically, Sections 1.9, 3.1, and 3.2 have the legal effect of resolving any and all disputes by and between Choice and Paramkrupa related to the franchise agreement and the Subject Property.

[Doc. 40-7, p. 2]. The three sections referenced by counsel discuss the scope of the releases contained in the agreement. Section 1.9 of the Settlement and Release Agreement provides:

> A dispute has arisen between the Parties involving defendant's alleged unauthorized use and infringement of the CHOICE family of marks at or in association with the Subject Property, resulting in the Lawsuit. The Lawsuit and all claims asserted therein or which could have been asserted by or between the Parties relating to Defendant's alleged infringement of the CHOICE family of marks, are collectively referred to as the "Dispute."

[Doc. 40-5, p. 5]. This language is identical to § 1.9 in the draft transmitted on July 30 [*see* Doc. 40-2, p. 4]. Section 3.1 provides:

> In consideration for the Settlement Amount set forth in Paragraph 2.1, the Stipulated Judgment pursuant to Paragraph 2.2, the Stipulated Permanent

2

> Injunction pursuant to Paragraph 2.3 and releases set forth herein, Plaintiff hereby releases and forever discharges Defendant its respective officers, directors, present and former employees, agents, warrantors, successors, assignees, predecessors, representatives, attorneys, insurers, all affiliated entities, and all other persons and business entities in any way associated with Defendant from **any and all claims, demands, costs, expenses, charges, or any other liabilities which were or could have been brought in the Lawsuit and which arise out of Defendant's alleged unauthorized use of the CHOICE family of marks at or in connection with the Subject Property.**

[Doc. 40-5, p. 6 (emphasis added)]. Section 3.2 similarly provides:

> In consideration of the releases set forth in 3.1 and the other terms and conditions of this Agreement, Defendant releases and discharges Plaintiff its respective officers, directors, present and former employees, agents, warrantors, successors, assignees, predecessors, representatives, attorneys, insurers, all affiliated entities, and all other persons and business entities in any way associated with Plaintiff from **any and all claims, demands, costs, expenses, charges, or any other liabilities which were or could have been brought in the Lawsuit and which arise out Defendant's alleged unauthorized use of the CHOICE family of marks at or in connection with the Subject Property.**

[Doc. 40-5, pp. 6-7 (emphasis added)]. The bolded language in sections 3.1 and 3.2 is identical to the July 30 draft. [*See* Doc. 40-2, pp. 5-6].

> Counsel for Choice Hotels responded to PHL's counsel "point of confirmation" as follows:
>
> Respectfully, no.
>
> As you know, (1) the lawsuit, (2) all of our settlement discussions, and (3) the settlement agreement itself are and have always been carefully limited to Choice Hotels' trademark infringement claims. There have never been any breach of contract claims discussed because they are not at issue in the litigation. After you explain this to your client, please advise if he is willing to sign. Otherwise, we are going to need to file something tomorrow advising that the Defendant is refusing to execute the settlement documents and we will place our MSJ back on calendar and file a reply brief.

[Doc. 40-8, p. 2]. PHL did not sign the documents. Choice Hotels responded by filing the instant motion to enforce settlement agreement.

3

## II. Legal Standard

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (quoting *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993)). "Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." *Id.* (quoting *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000)). Under Oklahoma law, a settlement agreement is a contract. *Russell v. Bd. of County Comm'rs of Carter County*, 1 P.3d 442, 443 (Okla. Civ. App. 2000). "As such, it is subject to the rules of offer and acceptance and of mutual assent which control any issue of contract formation." *In re De-Annexation of Certain Real Prop. From City of Seminole*, 204 P.3d 87, 89 (Okla. 2009).

## III. Analysis

On July 30, 2019, Choice Hotels made PHL a settlement offer comprised of a proposed settlement agreement and attachments. [*See* Doc. 40-2]. On August 15, 2019, PHL made a counter-offer. [*See* Doc. 40-4]; *see also In re De-Annexation of Certain Real Property from City of Seminole*, 204 P.3d at 89 ("An acceptance that modifies the terms of an offer is a counter offer and constitutes a rejection of the initial offer."). Choice Hotels then agreed to PHL's requested changes. [Doc. 40-5]. Choice Hotels' agreement was unconditional and did not modify the terms proposed by PHL. Accordingly, the August 19 email from counsel for Choice Hotels to counsel for PHL constituted an acceptance. *See In re De-Annexation of Certain Real Property from City of Seminole*, 204 P.3d at 89 ("[A]n acceptance will not bind the offeror unless it is unconditional, identical to the offer, and does not modify, delete, or introduce any new terms into the offer.").

The issue here is whether the requisite "meeting of the minds" existed to form a binding contract. In Oklahoma, "[i]t is essential to the existence of a contract" that the parties give their

consent. 15 Okla. Stat. § 2. Consent must be free, mutual, and communicated by each to the other. 15 Okla. Stat. § 51. "Consent is not mutual unless the parties all agree upon the same thing in the same sense. But in certain cases, defined by the article on interpretation, they are to be deemed so to agree without regard to the fact." 15 Okla. Stat. § 66.

PHL argues "it is impossible for PHL and Choice Hotels to have formed a binding settlement agreement when both parties so emphatically dispute the most essential term of the alleged settlement itself – the scope of the release." [Doc. 41, p. 6]. However, the parties agreed to contract language that *does* define the scope of the release: "any and all claims . . . which were or could have been brought in the Lawsuit **and which arise out Defendant's alleged unauthorized use of the CHOICE family of marks at or in connection with the Subject Property.**" [Doc. 40-5, pp. 6-7 ¶¶ 3.1, 3.2 (emphasis added)]. The terms of agreement accepted by the parties are limited to the trademark infringement claims raised in this lawsuit. Choice Hotels brought no other claims against PHL. Thus, the release applies only to those claims which were or could have been brought in this suit **and** which arise out of PHL's alleged unauthorized use of the CHOICE family of marks at or near the real property on Military Boulevard in Muskogee, Oklahoma. The court therefore finds and concludes that the parties demonstrated the requisite "meeting of the minds" as to the terms found at Doc. 40-5 and entered into a valid settlement agreement.[1]

---

[1] Defendant argues the court should hold an evidentiary hearing. But evidentiary hearings are necessary only when "material facts concerning the existence or terms of an agreement to settle are in dispute." *Hardage*, 982 F.2d at 1496. No material facts are in dispute here – only their legal significance. Accordingly, no hearing is necessary. *See also In re De-Annexation of Certain Real Property from City of Seminole*, 204 P.3d at 89 (When "the dispute concerns the legal effect of the relevant facts, the question is whether the party seeking enforcement is entitled to judgment as a matter of law.").

*In re De-Annexation of Certain Real Property from City of Seminole*, 204 P.3d 87 (Okla. 2009), does not compel a different result. There, the Oklahoma Supreme Court reversed the trial court because it had impermissibly composed a settlement agreement by supplying terms on which there had been no final agreement. That is not the case here. Choice Hotels unconditionally accepted PHL's proposed counteroffer on August 19, 2019, creating an enforceable contract.

## IV. Conclusion

WHEREFORE, Choice Hotel's Motion to Enforce Settlement Agreement [Doc. 40] is GRANTED.

IT IS SO ORDERED this 9th day of December, 2019.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma